UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GEKIA RANDALL MOSLEY,

    Plaintiff,

v.                              CASE NO:

CITIBANK, N. A.,

    Defendant.

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Gekia Randall Mosley, by and through her undersigned counsel, and, by way of this Complaint, seeks relief against Defendant Citibank, N. A. for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq*. (ADA). In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Gekia Randall Mosley ("Plaintiff" or "Ms. Mosley") is an adult female citizen and resident of the City of Jacksonville, Florida. At all times relevant herein, Plaintiff worked for Defendant in the City of Jacksonville, Duval County, Florida.

1

2. Defendant Citibank, N. A. ("Defendant" or "Citi") is a Delaware corporation, headquartered in New York, and conducts business in the City of Jacksonville, Florida. Defendant is, and has been, a covered employer within the meaning of Title VII.

3. Plaintiff was a covered employee of Defendant within the meaning of Title VII at all times relevant herein.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e(5)(f)(3).

5. A substantial part of the acts complained of herein occurred in Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

6. A charge of discrimination was filed with the Equal Employment Opportunity Counsel (EEOC) by Plaintiff against Defendant.

7. Administrative prerequisites, if any, have been fulfilled.

**FACTUAL ALLEGATIONS FOR ALL CLAIMS**

8. On or about November 12, 2012, Defendant hired Plaintiff. Plaintiff's most recent position with Defendant prior to her termination was as an Immediate Analyst Officer.

9. At all times relevant herein, Plaintiff worked in a professional and competent manner at Citi. Plaintiff was highly qualified for her position, having worked for Citi for more than 10 years.

10. During the times relevant to the claims herein, Plaintiff, as a Black female, was one of only two Black employees on her work team.

11. During her tenure at Citi, Plaintiff performed her work satisfactorily.

12. Beginning in January 2023, Plaintiff received a troubling health report from her physician, which required her to undergo various biopsies and testing. In addition to the pain of the procedures, Plaintiff experienced a great deal of stress and fear of what was to come in her immediate future and for her long term survival.

13. In February 2023, Virginia Weinhoff, a White female, was appointed Interim Director of Plaintiff's team, making her Plaintiff's second level supervisor.

14. In order to be transparent with her new manager, Plaintiff explained her health situation to Ms. Weinhoff in confidence.

15. Ms. Weinhoff responded to Plaintiff's report of her health issues by telling Plaintiff that Plaintiff's first priority should be protecting Citi, and that, rather than continuing to do her job to the best of her ability while undergoing testing and painful biopsies, Plaintiff should have taken a leave of absence.

16. Additionally, Plaintiff was told by Ms. Wienhoff that because Plaintiff had not abandoned her job during a stressful time in her life, she could be put on a Performance Improvement Plan (PIP) because her performance had slipped while she was enduring medical tests and procedures and facing uncertainty about her immediate future and long term survival.

17. In March 2023, Danielle Jacobson, a White female, was appointed to be Unit Manager of Plaintiff's team. The Unit Manager is Plaintiff's first level supervisor.

18. Plaintiff then explained her recent medical issues to Ms. Jacobson in confidence.

19. Ms. Jacobson was initially sympathetic when Plaintiff explained her situation, but in late March 2023, Ms. Jacobson presented Plaintiff with the first PIP Plaintiff had ever been assigned during her tenure with Defendant that was to begin on April 1, 2023.

20. Plaintiff reported the PIP to Human Resources (HR) and explained that she felt that she was being discriminated against by Ms. Weinhoff.  HR told Plaintiff that her manager would inform her of the results of the investigation.

21. Approximately two weeks later, Ms. Jacobson informed Plaintiff that HR agreed with the PIP. Plaintiff would later find out that this was not a true statement and that HR had rejected the PIP for Plaintiff.

22. As Plaintiff's stress level increased due to treatment in the workplace, Plaintiff sought medical advice to address the increased stress and received approval for a short term disability leave because of stress.

23. Plaintiff was therefore out of the office on short term disability leave from May 2023 until July 2023.

24. Upon return from short term disability leave in July 2023, and continuing through the remainder of her employment with Defendant, Plaintiff experienced increase harassment and differing treatment in the workplace. For example, Ms. Jacobson treated Plaintiff in a harassing manner, including denying assignment to special projects in early 2024.

25. At approximately the same time as Plaintiff's return from short-term disability leave, a White employee who had been on medical leave for nearly a year was welcomed back, given special projects and not subjected to harassment.

26. As a form of harassment, beginning in March 2023, when Ms. Weinhoff and Ms. Jacobson began supervising Plaintiff, the supervisors would

place phone calls to Plaintiff and send frequent e-mails accusing Plaintiff of not meeting goals. This criticism of Plaintiff's work was false.

27. The goals set for Plaintiff were constantly changing and no one on the team was consistently meeting the variable goals, but Plaintiff was singled out as the only one to receive the harassing emails.

28. In an attempt to end the harassment in the workplace, in approximately late 2023/early 2024, Plaintiff requested that Ms. Weinhoff transfer her to a different team. This request was denied.

29. By August 2023, Plaintiff was regularly called a liar by Ms. Jacobson and subjected to passive-aggressive emails from Ms. Jacobson.

30. Ms. Jacobson spread lies about Plaintiff in the office of Citi and discussed Plaintiff's private medical information with others in the office and in a loud voice so that people not involved in the conversation who were in the office would also know Plaintiff's personal information.

31. Coworkers began contacting Plaintiff to see what was going on with her person situation in April and May 2024, because they were hearing disturbing information about Plaintiff from her supervisors.

32. By March 2024, the harassment in the workplace was severely impacting Plaintiff's physical and mental health. Both Plaintiff's physician and

6

mental health counselor recommended that she look for other work in order to preserve her health.

33. On or about April 18, 2024, Plaintiff was working from home when she received a message from a coworker who stated that she could hear Ms. Jacobson on a phone call speaking very loudly about how Plaintiff was faking her medical condition in order to take leave and how Plaintiff was about to be fired and that was why Plaintiff had made a complaint to HR. Ms. Jacobson also repeated what she had said on the phone call about Plaintiff to others in close proximity to her office. This same behavior by Ms. Jacobson occurred on other calls that day.

34. Plaintiff immediately requested a meeting with Ms. Weinhoff to discuss the matter of Ms. Jacobson's statements about Plaintiff.

35. On April 18, 2024, Plaintiff held a meeting with Ms. Weinhoff about Ms. Jacobson's false and derogatory statements about Plaintiff. During that meeting, Plaintiff asked why Ms. Weinhoff had not put a stop to the disparagement of Plaintiff by Ms. Jacobson. At first Ms. Weinhoff denied knowing about what had been said, but when Plaintiff pointed out that Ms. Weinhoff had been on the first call, Ms. Weinhoff responded that she wanted to discuss the matter with Ms. Jacobson in private.

36. On or around April 18, 2024, Plaintiff was told she was on another PIP. In the same meeting with Ms. Weinhoff, Plaintiff questioned why she was on another PIP and Ms. Weinhoff informed Plaintiff that this was indeed Plaintiff's first PIP because the one from the previous year had been denied by Defendant's HR.

37. As a result of having to follow a PIP that was rejected as proper by HR, Plaintiff suffered insults, harassment, and micromanagement from Ms. Jacobson. Plaintiff was also prevented from applying for other jobs with Defendant because of the bogus PIP.

38. After Plaintiff learned that she had been deceived by Ms. Jacobson regarding the PIP, and that there was no indication of her managers taking any remedial action, Plaintiff again reported the discriminatory harassing treatment she was experiencing in the workplace to Defendant's HR.

39. In approximately May 2024, Plaintiff had an interview with Jennifer Whitechurch, an investigator from Defendant's Employee Relations Department. During this interview, Plaintiff explained the discriminatory harassment she had endured in the workplace. Ms. Whitechurch stated that she was going to investigate and address Plaintiff's complaints.

40. While Plaintiff was waiting for a resolution of her complaints about treatment in the workplace, she continued to report ongoing harassment she was suffering in the workplace by her managers to Ms. Whitechurch.

41. On July 24, 2024, Ms. Whitechurch informed Plaintiff that her investigation was closed.

42. On July 26, 2024, Plaintiff's employment was terminated by Defendant.

43. In addition to the financial and emotional harm caused by having her employment wrongfully terminated, Plaintiff was no longer able to consult her physician or mental health provider because her insurance was cancelled. Accordingly, Plaintiff has suffered untreated health problems due to Defendant's unlawful termination.

44. All conditions precedent, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT I
**(Violation of Title VII (42 U.S.C. §§ 2000e *et seq*.) – Race Discrimination)**

45. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 44 above as though set forth fully herein.

46. During Plaintiff's employment, Defendant, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her

race in violation of Title VII, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by tolerating behavior directed at Plaintiff on account of Plaintiff's race; and failing to take prompt remedial action to stop the race based differing and discriminatory treatment to which Plaintiff was being subjected.

47. During the course of Plaintiff's employment with Defendant, and under the supervision of Ms. Jacobson and Ms. Weinhoff, Plaintiff was subjected to race discrimination, that included, *inter alia*, differing treatment made on account of her race, for example, being denied assignment to special projects when returning from short term disability leave when a White coworker who had been on longer term medical leave was welcomed back and given special projects.

48. In addition, Defendant terminated Plaintiff's employment because of her race in violation of Title VII.

49. The acts and omissions committed by Defendant against Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

50. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental

anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant.

## COUNT II
### (Violation of 42 U.S.C. § 1981 – Race Discrimination)

51. Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 - 44 above as though set forth fully herein.

52. Plaintiff is African-American and was employed by Defendant during the time period relevant herein.

53. During Plaintiff's employment, Defendant, by and through their agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 1981, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, for example, engaging in harassing behavior on account of Plaintiff's race; denying her opportunities for working on special projects in comparison to non-Black employees; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was subjected.

54. In addition, Defendant terminated Plaintiff's employment because of her race in violation of 42 U.S.C. § 1981.

55. Plaintiff was injured and negatively affected because of this discriminatory work environment, and because of her discriminatory termination by Defendant.

56. The acts and omissions committed by Defendant and their agents, officials and/or employees against Plaintiff were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

57. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## COUNT III
**(Violation Of 42 U.S.C. §§ 12101 *et seq*. – Disability Discrimination)**

58. Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 - 44 above as though set forth fully herein.

59. During Plaintiff's employment, Defendant, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of her disability in violation of the ADA, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's

working conditions by tolerating behavior directed at Plaintiff on account of Plaintiff's disability; and failing to take prompt remedial action to stop the disability based differing and discriminatory treatment to which Plaintiff was being subjected.

60. During the course of Plaintiff's employment with Defendant, and under the supervision of Ms. Jacobson and Ms. Weinhoff, Plaintiff was subjected to disability discrimination, that included, *inter alia*, differing treatment made on account of her disability, and sharing confidential medical information about Plaintiff's condition with other employees, along with expressing the opinion to other employees that Plaintiff was not entitled to disability leave and was taking it even though she did not need it.

61. In addition, Defendant terminated Plaintiff's employment because of her disability in violation of the ADA.

62. The acts and omissions committed by Defendant against Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

63. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back

13

pay, lost benefits, front pay, and compensatory and punitive damages against Defendant.

## COUNT IV
**(Violation Of Title VII - 42 U.S.C. §§ 2000e *et seq* - Retaliation)**

64. Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 - 44 above as though set forth fully herein.

65. Plaintiff engaged in protected activity by objecting to discrimination in the workplace at Defendant, including complaints to Defendant's Ethics Hotline and Human Resources Department. At all times relevant herein, Plaintiff held a reasonable, good faith belief that her treatment in the workplace by Defendant was discriminatory conduct on account of her race and disability and Plaintiff reported the same to Defendant on numerous occasions.

66. After Plaintiff engaged in protected activity, specifically, reporting discrimination to Defendant's Employee Relations Hotline and Human Resources Department, and because of her engagement in that activity, Defendant took adverse action against Plaintiff in violation of Title VII by, *inter alia*, subjecting Plaintiff to unfair and unapproved discipline in the form of a bogus PIP, scrutinizing Plaintiff's work differently from other employees, otherwise harassing Plaintiff, and ultimately, terminating Plaintiff's employment.

67. The acts and omissions committed by Defendant directed at Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

68. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant.

## COUNT V
**(Violation of 42 U.S.C. §§ 12101 *et seq*. - Retaliation)**

69. Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 - 44 above as though set forth fully herein.

70. Plaintiff engaged in protected activity by objecting to disability discrimination in the workplace at Defendant, including complaints to Defendant's Ethics Hotline and Human Resources Department. At all times relevant herein, Plaintiff held a reasonable, good faith belief that her treatment in the workplace by Defendant was discriminatory conduct on account of her disability and Plaintiff reported the same to Defendant on numerous occasions.

71. After Plaintiff engaged in protected activity, specifically, reporting discrimination to Defendant's Employee Relations Hotline and Human Resources Department, and because of her engagement in that activity, Defendant took adverse action against Plaintiff in violation of the ADA by, *inter alia*, subjecting Plaintiff to unfair and unapproved discipline in the form of a denied PIP, scrutinizing Plaintiff's work differently from other employees, otherwise harassing Plaintiff, and ultimately, terminating Plaintiff's employment.

72. The acts and omissions committed by Defendant directed at Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

73. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant.

**WHEREFORE**, Plaintiff, Gekia Randall Mosley, respectfully requests that this Honorable Court grant the following relief:

(a)     Enter judgment on behalf of Plaintiff and against Defendant on all counts herein;

(b)     Award Plaintiff back pay including lost benefits and front pay under Section 1981, Title VII and the ADA;

(c)     Award Plaintiff compensatory damages under Section 1981, Title VII, and the ADA in an amount to be determined by the jury;

(d)     Order Defendant to reinstate Plaintiff and other declaratory relief;

(e)     Award Plaintiff punitive damages for Defendant's willful violations of Section 1981, Title VII, and the ADA;

(f)     Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest; and

(g)     Such other or further relief as the Court deems appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 23, 2025                    Respectfully submitted,

*/s/ Neil L. Henrichsen*
Neil L. Henrichsen
Florida Bar No.: 0111503
HENRICHSEN LAW GROUP PLLC
301 W. Bay St., 14th Floor
Jacksonville, Florida 32202
Phone: (904) 381-8183

17

Fax: (904) 212-2800
nhenrichsen@hslawyers.com
service@hslawyers.com
**Lead Counsel for Plaintiff**